```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF INDIANA
                        FORT WAYNE DIVISION


RICARDO JIMENEZ and                  )
GLADYS HUERTAS,                      )
                                     )
     Plaintiffs,                     )
                                     )
vs.                                  )    NO. 1:13-CV-340
                                     )
CRST SPECIALIZED TRANSPORTATION      )
MANAGEMENT, INC., and AL THOMPSON,   )
                                     )
     Defendants.                     )
```

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff Ricardo Jimenez' Partial Motion for Summary Judgment, filed on October 13, 2015 (DE #77); and (2) Defendants' Cross-Motion for Partial Summary Judgment, filed on November 13, 2015 (DE #80). For the reasons set forth below, Plaintiff Ricardo Jimenez' Partial Motion for Summary Judgment (DE #77) is **DENIED,** and Defendants' Cross-Motion for Partial Summary Judgment is **GRANTED.** Plaintiff Ricardo Jimenez' claim for intentional infliction of emotional distress (Count IX of the Amended Complaint) is **DISMISSED.**[1]

---

[1] The Amended Complaint asserts an IIED claim on behalf of both Ricardo Jimenez and Gladys Huertas. (DE #31, using "plaintiffs'" and claiming that "all of the plaintiffs have suffered severe emotional distress..."). Because Defendants did not move for summary judgment on the IIED claim as to Gladys Huertas, that claim remains pending.

BACKGROUND

On October 7, 2013, Plaintiffs Ricardo Jimenez ("Jimenez") and Gladys Huertas ("Huertas") initiated this action in the Allen Circuit/Superior Court. The case was removed to federal court and subsequently amended. The Amended Complaint alleges nine counts against two Defendants (CRST Specialized Transportation Management, Inc. ("CRST") and Al Thompson): negligent hiring, negligent supervision, negligent retention, negligence based on failure to warn of dangerous premises, assault and battery, tortious interference with a business relationship/expectancy, tortious interference with contract relations, loss of consortium, and intentional infliction of emotional distress. Plaintiffs voluntarily dismissed all claims except the assault and battery, loss of consortium, and intentional infliction of emotional distress claims. Following the close of discovery, Jimenez filed the instant motion for partial summary judgment. Jimenez seeks summary judgment on his claims for assault and battery and intentional infliction of emotional distress only. In response, Defendants have filed a cross-motion seeking summary judgment in their favor on Jimenez' claim for intentional infliction of emotional distress. The instant motions are now fully briefed and ripe for adjudication.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion may not rely on allegations or denials in his own pleading, but rather must "marshal and present the court with the evidence" that he contends will prove the case. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Where the parties file cross-motions for summary judgment, the court must consider each motion; but despite the parties' agreement that no genuine dispute of material fact exists, the court can deny all motions if the parties do not establish their rights to judgment as

a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002).

Facts

Jimenez entered into a contract with CRST to provide over-the-road trucking services. (Jimenez Dep. at 47-48). Jimenez was required to attend a driver orientation program at CRST's facility in Fort Wayne, Indiana, from January 7, 2013, through January 11, 2013. (*Id.* at 51-54). Al Thomson ("Thomson")[2] was assigned to teach the driver orientation training classes. (*Id.* at 56). Carol Hollingsworth ("Hollingsworth") and James Stewart ("Stewart") also attended those classes. (*Id.*).

On the fourth day of the driver orientation class, while Thomson was discussing cargo handling and showing trailers to the three drivers, an incident occurred that led to both an internal complaint and this lawsuit. (*Id.* at 70; Hollingsworth Dep. at 16-19). While Thomson was teaching, Hollingsworth asked Jimenez a question about an electrical connection or cord on the trailer. (Jimenez Dep. at 70; Hollingsworth Dep. at 16). Jimenez took Hollingsworth to the front of the trailer to show Hollingsworth where the electrical cord was plugged in. (Hollingsworth Dep. at 16).

At this point, Jimenez' and Thomson's versions of events begin to differ. According to Jimenez, while he was answering the question, Thomson charged at him with two fingers raised and shouted: "[Y]ou

---

[2] Jimenez' Amended Complaint names "Al Thompson" as a defendant, but this is a misspelling, and this Court has utilized the correct spelling throughout this order. (Thomson Dep. at 4).

-4-

motherfucker... [i]f you want to teach this class, if you want my job, you need to come over here and teach this class."[3] (Jimenez Dep. at 70). He then pushed his fingers into Jimenez' chest, causing Jimenez to move backwards. (*Id.*). Jimenez told Thomson: "Don't you ever put your hands on me again." (*Id.*).

According to Defendants, Thomson raised his voice to Jimenez, pointed his finger at Jimenez, and a sharp verbal exchange occurred between the two men. (Thomson Dec. ¶¶ 3-6). Thomson does not recall using profanity during this exchange. (Thomson Dec. ¶ 5; Thomson Dep. at 20). He also does not recall making any physical contact with Jimenez during the exchange. (Thomson Dec. ¶ 6; Thomson Dep. at 20). After the exchange, the class continued uneventfully. (Stewart Dep. at 64, 68; Hollingsworth Dep. at 30; Thomson Dec. ¶ 7).

Thomson claims that, at the point the incident occurred, Jimenez had already interrupted class several times that day. (Thomson Dec. ¶ 3). According to Thomson, his purpose in engaging in this exchange was to re-direct Jimenez' attention and continue with the portion of the class so they could get out of the cold. (Thomson Dec. ¶ 4, Thomson Dep. at 20). Jimenez denies that he interrupted class. (Jimenez Dep. at 111-12).

CRST's Driver Support Manager, Camille Smith, investigated this incident and determined that a physical altercation had taken place between Thomson and Jimenez. (Smith Dep. at 21-29). Defendants point

---

[3] Jimenez' brief actually claims that Thomson said: "Hey motherfucker Listen here, if you want to be a fucking instructor take my fucking job and do it if you can do it better than me." (DE #77 at 3). This Court has used the language referenced in the citation to Jimenez' deposition, not the slightly different language counsel used in his brief.

out, however, that Camille Smith determined that "some type of contact" occurred, but "not to the extent that [Jimenez] was pushed or shoved." (Smith Dep. at 27).

Jimenez asserts that he has received treatment from a mental health professional since the incident. (Jimenez Dep. at 181-82).

DISCUSSION

Assault and Battery

The Indiana Supreme Court, citing the Restatement (Second) of Torts, has stated, "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the other person . . ., or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007). Moreover, "[a] touching, however slight, may constitute an assault and battery." *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007). Assault requires a showing that "one acts intending to cause an imminent apprehension of a harmful or offensive contact with another person." *Sheehy v. Brady's This Is It*, No. 2:12 CV 477, 2013 WL 3319684, *8 (N.D. Ind. 2013)(quoting *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008)).

Although Jimenez has sought summary judgment on this claim, Defendants have presented a version of events that is very different than that presented by Jimenez, as outlined in the preceding section. There is a question of fact regarding whether Thomson made physical contact with Jimenez. The Defendants claim that no contact occurred.

Jimenez contends that Thomson pushed him in the chest with enough force to cause him to move backwards. There is also a question of fact regarding Thomson's intent. Thomson contends he intended to redirect Jimenez' attention so that class could continue and they could get out of the cold. A jury could, however, draw other reasonable inferences from the facts presented by Jimenez. This Court cannot weigh the evidence on summary judgment. The factual discrepancies here are material as they go directly to the issue of whether a reasonable jury could conclude that the contact (if it occurred at all) was harmful or offensive, and whether Thomson had the requisite intent. Summary judgment[4] is inappropriate here, and Jimenez' motion for partial summary judgment on the Assault and Battery claim is **DENIED.**

Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress ("IIED") under Indiana law is the intent to harm someone emotionally and requires that the defendant: (1) engage in extreme and outrageous conduct; (2) which intentionally or recklessly; (3) causes; (4) severe emotional distress to another. *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). The requirements to prove this tort are rigorous and it is found only when the conduct "exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious

---

[4] Despite citing the proper legal standard for summary judgment in his motion, Jimenez asserts that he has "stated a claim" for assault and battery against Thomson. (DE #77 at 5). The proper inquiry is not whether he has stated a claim but whether he has set forth sufficient undisputed evidence such that judgment as a matter of law is warranted.

kind." *Curry*, 943 N.E.2d at 361. IIED as a separate tort was first recognized in Indiana in 1991. *Id.* at 361 (citing *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991)).

Jimenez argues, based on case law pre-dating Indiana's recognition of IIED by many years, that the general rule in Indiana requires a physical injury for a claim of IIED, but that there is an exception where emotional distress is accompanied by an assault or battery. (DE #77 at 5, citing *Charlie Stuart Oldsmobile, Inc.*, 357 N.E.2d 247 (1976) and *Golibart v. Sullivan*, 66 N.E. 188 (1903)). The cases Jimenez relies upon do not address the tort of IIED and are inapplicable here.

Although Jimenez moved for summary judgment on this claim, he made almost no effort to demonstrate that he is entitled to judgment as a matter of law.[5] Jimenez and Thomson have presented wholly different versions of the event in question. They cannot agree whether Thomson's fingers touched Jimenez. They cannot even agree whether profanity was used, or whether Jimenez had interrupted class repeatedly prior to the incident. Just as with Jimenez' assault and battery claim, disputes regarding material facts prevent the entry of summary judgment in Jimenez' favor on his IIED claim. Jimenez' motion for summary judgment on his IIED claim must be denied.

Resolution of Defendants' cross-motion for summary judgment, however, requires further analysis. Defendants argue that, even if there were no disputes of fact and Jimenez' version were accepted as

---

[5] Jimenez claims that he "also states a claim for infliction of emotional distress." (DE #77 at 5). Again, Jimenez fails to distinguish between stating a claim and producing undisputed evidence warranting summary judgment.

true, the claim fails as a matter of law for several reasons: the alleged behavior of Thomson is not extreme and outrageous, Jimenez has not demonstrated that Thomson acted with intent to cause emotional harm, and Jimenez has produced insufficient evidence that he suffered severe emotional distress.

This Court agrees with Defendants that Thomson's conduct, even accepting Jimenez' version as true, was not "outrageous or extreme" such that his IIED claim can proceed to trial. In describing the type of behavior that is actionable as IIED, the notes to § 46 of the Restatement (Second) of Torts are informative:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

Restatement (Second) of Torts § 46 at cmt. d (1965).

Jimenez argues that *Bradley v. Hall*, 720 N.E.2d 747 (Ind. Ct. App. 1999), supports his position that the IIED claim should survive summary judgment. In *Bradley*, the plaintiff's supervisor shouted at her and criticized her in front of her co-workers, made comments about her menopause, asked if her husband was impotent, suggested her position might be eliminated, and encouraged her to apply for other positions. This was not a one-time event, but an ongoing ordeal for

a period of years. The court reversed the trial court's entry of summary judgment on the IIED claim, finding that reasonable persons could differ in opinion about whether this was extreme and outrageous conduct. *Id.* at 753. *Bradley* is not helpful in resolving the instant case; the brief episode Jimenez has alleged is very different from the ongoing pattern of harassment presented in *Bradley*.[6]

*White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991), addressed the viability of an IIED claim in the context of a momentary flare of a supervisor's temper. In *White*, a supervisor learned of some idle employees, became angry, and:

> launched a profane tirade at the three workers present, including plaintiff, referring to them as 'mother fuckers,' accusing them of sitting on their 'fucking asses,' and threatening to 'show them to the gate.' The tirade lasted for about a minute, and then [the supervisor] left the area.

*Id.* at 1209. The plaintiff ended up spending three days in the hospital as a result of the incident. A jury awarded her $60,000 in damages on her IIED claim, but the Louisiana Supreme Court set the award aside, finding that:

---

[6] Although cases involving ongoing harassment are not particularly informative here, even in the context of ongoing harassment, an Indiana court has found conduct more egregious than that alleged by Jimenez non-actionable under IIED. In *Winchester v. Allison Transmission/GMC*, No. 1:04-CV-1153-DFH-WTL, 2006 WL 2450331, at *5 (S.D. Ind. Aug 22. 2006), an employee experienced ongoing harassment in a multitude of ways: name-calling, telephone pranks, verbal exchanges in threatening tones, a dead bird being left in the employee's lunch box, and a substance that looked like feces being left at a desk where he worked. The court noted that:
> The name-calling, telephone pranks, and even verbal exchanges in threatening tones are clearly, as a matter of law, not actionable conduct in almost any environment. The dead bird incident and the feces placed on the desk, if it was indeed feces, push the limit of non-actionable conduct. Those actions were beyond sophomoric.

*Id.* at *5. Nonetheless, the facts were deemed non-actionable. *Id.* at *5-*6.

> The one-minute outburst of profanity directed at three employees by a supervisor in the course of dressing them down for not working as he thought they should does not amount to such extreme and outrageous conduct as to give rise to recovery for intentional infliction of emotional distress. The vile language used was not so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community. Such conduct, although crude, rough and uncalled for, was not tortious, that is, did not give rise to a cause of action for damages under general tort law or LSA-C.C. Art. 2315. The brief, isolated instance of improper behavior by the supervisor who lost his temper was the kind of unpleasant experience persons must expect to endure from time to time. The conduct was not more than a person of ordinary sensibilities can be expected to endure. The tirade was directed to all three employees and not just to plaintiff specifically. Although the evidence certainly supports a finding that plaintiff was a decent person and a diligent employee who would not condone the use of vulgar language and who would be upset at being unjustifiably called down at her place of work, there was no evidence that she was particularly susceptible to emotional distress, or that McDermott had knowledge of any such susceptibility. It was obviously his intention to cause some degree of distress on the part of the employees, but there is no indication that his spontaneous, brief, intemperate outburst was intended to cause emotional distress of a severe nature.

*Id.* at 1210-11.

Similarly, in *Showalter v. Richmond*, No. 1:08-CV-666-WTL-JMS, 2010 WL 746785, at *5 (S.D. Ind. Feb. 26, 2010), the court granted summary judgment on an IIED claim, noting that "yelling, cursing, slamming a book on her desk, and flinging paper in her direction - is simply not extreme and outrageous under Indiana law." Likewise, in *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997), the Seventh Circuit Court of Appeals noted that, "an isolated

and brief incident" of yelling and the refusal to reassign an employee is not extreme and outrageous.

In contrast to the above cases, *Waldrip v. Waldrip*, 976 N.E.2d 102, 117 (Ind. Ct. App. 2012), provides an example of the types of conduct that is actionable as IIED in Indiana.

> Waldrip alleges that Angela falsely accused him of criminal conduct, leading to a lengthy period of incarceration before the criminal charges against him were resolved, and which led Waldrip to have reduced contact with his minor children and which charges Angela attempted to use as leverage in child custody proceedings.

*Id.* (finding the allegations sufficient to survive a motion to dismiss).

The behavior alleged by Jimenez is not meaningfully distinguishable from the behaviors at issue in *White, Showalter* or *McCreary*, and falls woefully short of the conduct described in *Bradley* and *Waldrip.* Even accepting Jimenez' version as true, there was only a brief flare of Thomson's temper, resolved as quickly as it began. And, while it was, according to Jimenez, accompanied by physical contact that could support a finding that a battery occurred, that conduct was momentary and minor at most. After the momentary flare of Thomson's temper, the class continued uneventfully. Without a doubt, Thomson was unprofessional and rude, but this is not the kind of conduct that "exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind." *Curry*, 943 N.E.2d at 361.

Even if Jimenez had alleged facts sufficiently extreme and outrageous, there is another problem with Jimenez' IIED claim. An

IIED claim requires a showing that the extreme and outrageous conduct caused severe emotional distress. In response to Defendants' cross-motion for summary judgment, Jimenez has produced no evidence that he suffered severe emotional distress. In his memorandum in opposition to Defendants' cross-motion for summary judgment, Jimenez alleges, in a conclusory fashion, only that he:

> suffered severe emotional distress and sought treatment from mental health professionals since the incident (Jimenez Dep. pp. 181-182, (Deposition of Gladys Huertas {"Huertas Dep."} excerpts attached as Exhibit E pp. 38-75).

(DE #85-1 at 3). The portion of Jimenez' deposition testimony relied upon establishes only that he has had expenses related to his alleged emotional distress; namely, medication and co-pays for visits with "Melody" - presumably a mental health professional. The fact that expenses have been incurred does not establish that his emotional distress was severe or that it was caused by the allegedly extreme and outrageous behavior of Thomson. It tells this Court nothing at all about what the experience was like for Jimenez. *Drake v. Minnesota Min. & Mfg.*, 134 F.3d 878, 887 (7th Cir. 1998)("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[.]"). As for the citation to a nearly 40-page section of Huertas' Deposition, it is not this Court's job to search the record for evidence supporting Jimenez' claim. *Bombard v. Fort Wayne Newspapers, Ind.*, 92 F.3d 560, 562 (7th Cir. 1996)("[i]t is not the function of the court to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon

which he relies."). The reply brief cites to no fact whatsoever other than the conclusion that he "suffered severe emotional distress and sought treatment from mental health professionals since the incident." Even if support for that proposition could be found somewhere within the cited portion of Huertas' deposition, the conclusory allegation is insufficient to prevent denial of summary judgment.

Having determined that summary judgment must be granted in Defendants' favor on Jimenez' IIED claim, both because the alleged conduct is not sufficiently extreme and outrageous and because Jimenez has presented insufficient evidence that the conduct caused severe emotional distress, the Court need not consider whether there is a dispute of fact regarding Thomson's intent to cause emotional harm. Likewise, since Jimenez' IIED claim fails with regard to Thomson, the Court need not address Jimenez' argument that CRST is liable based on respondeat superior.

CONCLUSION

For the reasons set forth below, Plaintiff Ricardo Jimenez' Partial Motion for Summary Judgment (DE #77) is **DENIED** and Defendants' Cross-Motion for Partial Summary Judgment is **GRANTED.** Plaintiff Ricardo Jimenez' claim for intentional infliction of emotional distress (Count IX of the Amended Complaint) is **DISMISSED.**

**DATED: September 30, 2016**     /s/ RUDY LOZANO, Judge
                                  **United States District Court**